IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| **J.P. Bryan,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:20-cv-00025-DC-DF** |
| | § | |
| **County Judge Eleazar R. Cano,** | § | |
| **Defendant.** | § | |

## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Defendant Eleazar R. Cano, Brewster County Judge, timely files this Motion to Dismiss to Plaintiff's First Amended Complaint and would show the Court as follows:

### I.    SUMMARY

Plaintiff J.P. Bryan ("Plaintiff") filed his Complaint for Declaratory Judgment on April 10, 2020. *See* Docket Entry No. 1. On May 1, 2020, Plaintiff filed his First Amended Complaint for Declaratory and Damages. *See* Docket Entry No. 6. Plaintiff seeks declaratory relief concerning "the original and new Declarations of Local State of Disaster and the various Orders closing hotels, motels and short-term rentals" alleging that these Declarations and Orders related to the global pandemic of a novel coronavirus, designated SARS-CoV2 which causes the disease COVID-19, "deprived him of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the Commerce Clause of Article I, Section 8, of the United States Constitution, and proximately cause him to suffer damages." *Id*. at ¶ 53. Further, Plaintiff alleges that he suffered "damages in excess of $75,000.00 exclusive of costs and attorneys' fees." *Id*. at ¶ 57.

## II. LACK OF SUBJECT MATTER JURISDICTION - FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1)

### A. FRCP 12(b)(1) STANDARD

It is well settled in the Fifth Circuit that "[t]he district court ... has the power to dismiss [pursuant to Rule 12(b)(1)] on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)(citing *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1384 (5th Cir.1989) (quoting *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)). The Fifth Circuit's review "is limited to determining whether the district court's application of the law is correct and, if the decision was based on undisputed facts, whether those facts are indeed undisputed." *Id*. (citing *Ynclan v. Department of the Air Force,* 943 F.2d 1388, 1390 (5th Cir.1991); *Williamson,* 645 F.2d at 413).

### B. POLITICAL QUESTION DOCTRINE

The political question doctrine "reflects the principle that, under our Constitution, there are some questions that cannot be answered by the judicial branch. Out of due respect for our coordinate branches and recognizing that a court is incompetent to make final resolution of certain matters, these political questions are deemed 'nonjusticiable.'" *Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008)(citing *Baker v. Carr*, 369 U.S. 186, 198 (1962).

The political question doctrine "presupposes that another branch of government is both capable of and better suited for resolving the" question. *Id.* Sometimes "the law is that the judicial department has no business entertaining the claim of unlawfulness—because the question is entrusted to one of the political branches or involves no judicially enforceable rights." *Vieth v.*

*Jubelirer*, 541 U.S. 267, 277 (2004)(citing, *e.g., Nixon v. United States,* 506 U.S. 224 (1993) (challenge to procedures used in Senate impeachment proceedings); *Pacific States Telephone & Telegraph Co. v. Oregon,* 223 U.S. 118, 32 S.Ct. 224 (1912) (claims arising under the Guaranty Clause of Article IV, §4)). Further, "[t]he political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch. The Judiciary is particularly ill suited to make such decisions, as 'courts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature.'" *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S.221, 229-230 (1986)(quoting *United States ex rel. Joseph v. Cannon,* 206 U.S.App.D.C. 405, 411, 642 F.2d 1373, 1379 (1981) (footnote omitted), cert. denied, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982)).

The matter of nonjusticiability requires the Court's inquiry to "proceed to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Baker*, 369 U.S. at 198. The Supreme Court identified "several formulations" to determine whether "a particular case raises a political question, which" the Fifth Circuit enumerates as:

> (1) "a textually demonstrable constitutional commitment of the issue to a coordinate political department;"
> (2) "a lack of judicially discoverable and manageable standards for resolving it;"
> (3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;"
> (4) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;"
> (5) "an unusual need for unquestioning adherence to a political decision already made;"
> (6) "or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

*Lane*, 529 F.3d at 558 (citing *Baker*, 369 U.S. at 217).

Therefore, "[q]uestions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court." *Lane*, 529 F.3d at 557 (quoting *Marbury v. Madison*, 1 Cranch 137, 5 U.S.137, 170 (1803)). As the Fifth Circuit notes:

> The Supreme Court clearly recognized that the political question doctrine partakes not only of the existence of separation of powers, but also of the limitation of the judiciary as a decisional body. The Court stated: "In determining whether a question falls within (the political question category), the appropriateness under our system of government of attributing finality to the action of the political departments and also the lack of satisfactory criteria for a judicial determination are dominant considerations." The Court was merely admitting that they were not tribal wisemen dispensing divinely or theoretically inspired judgments, but were a court limited to the application of predetermined law.

*Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard Tanker Dauntless Colocotronis*, 577 F.2d 1196, 1203 (5th Cir. 1978)(quoting *Coleman v. Miller*, 307 U.S. 433 (1939)). Thus, "the inextricable presence of one or more of these [*Baker*] factors will render the case nonjusticiable under the Article III 'case or controversy' requirement, and therefore, the Court would be without jurisdiction." *Id*.

Here, Plaintiff alleges causes of action concerning Defendant County Judge's Declarations of a Local State of Disaster on March 17, 2020 and March 25, 2020 and subsequent Orders from Defendant County Judge related to hotels, motels and short-term rentals. Specifically, Plaintiff requests that the Court:

(1) "declare null and void Defendant County Judge's original Declaration signed on March 17, 2020 and his new Declaration signed on March 25, 2020 because they deprived Plaintiff of his right to Due Process under the Fourteenth Amendment to the United States Constitution;
(2) determine that "Defendant County Judge's Order dated March 20, 2020 and ending with his Order Extending Amended Order signed on April 7, 2020 deprive[d] Plaintiff of his right to equal protection under the Fourteenth Amendment to the United States Constitution because they failed to serve a compelling state interest..."
(3) determine that "Defendant County Judge's Order dated March 20, 2020 and ending with his Order Extending Amended Order signed on April 7, 2020 deprived Plaintiff of his right to due process under the Fourteenth Amendment

to the United States Constitution, 0failed (sic) to serve a compelling governmental interest..."
(4) determine that "Defendant County Judge's Order dated March 20, 2020 and ending with his Order Extending Amended Order signed on April 7, 2020 deprived Plaintiff of his right to be protected from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution, failed to serve a compelling governmental interest..."
(5) determine that "[t]he travel ban was unconstitutional under the privileges and immunities clause of the Fourteenth Amendment of the United States Constitution."
(6) determine that "Defendant County Judge's Order dated March 20, 2020 and ending with his Order Extending Amended Order signed on April 7, 2020 violated the Commerce Clause, Article 1, Section 8 of the United States Constitution, failed to serve a compelling governmental interest..."

*See* Docket Entry 6, ¶¶ 29-52; specifically, ¶¶ 32, 34, 38, 45, 47 and 52, respectively.

On March 13, 2020, Governor Greg Abbott issued his "proclamation certifying that COVID-19 poses an imminent threat of disaster in the state of and **declaring a state of disaster for all counties in Texas**." *See* Docket Entry No. 6, Exhibit A (emphasis added). Further, Governor Abbott's Proclamation states that "costs incurred to prepare for and respond to COVID-19 are beginning to mount at the state and local levels;" and that "it is critical to take additional steps to prepare for, respond to, and mitigate the spread of COVID-19 to protect the health and welfare of Texans." *Id*. Thus, Governor Abbott's Proclamation was issued pursuant to Chapter 418 of the Texas Government Code.

On March 19, 2020, John W. Hellerstedt, M.D., Commissioner of the Department of State Health Services, issued his Declaration of a Public Health Disaster in the State of Texas. Specifically, Dr. Hellerstedt certified "that the introduction and spread of the communicable disease known as COVID-19 in the State of Texas has created an immediate threat, poses a high risk of death to a large number of people and creates a substantial risk of public exposure because of the disease's method of transmission and evidence that there are community spread in Texas."[1]

---

1 https://gov.texas.gov/uploads/files/press/DECLARATION_of_public_health_disaster_Dr_Hellerstedt_03-19-

Therefore, Dr. Hellerstedt declared "a state of public health disaster for the entire State of Texas." *Id*.

Texas Government Code, section 418.108 provides, in part, that "the presiding officer of the governing body of a political subdivision may declare a local state of disaster." TEX. GOV'T CODE §418.108(a). The presiding officer in Brewster County is Eleazar R. Cano, the Brewster County Judge. Following Governor Abbott's Proclamation declaring a state of disaster for all counties in Texas, Judge Cano issued a Declaration of Local State of Disaster Due to Public Health Emergency for Brewster County pursuant to Texas Government Code, section 418.108(a) on March 17, 2020. *See* Docket Entry 6, Exhibit B.

In Executive Order GA-08, Governor Abbott determined that "COVID-19 continues to spread and to pose an increasing, imminent threat of disaster throughout Texas; and the Texas Department of State Health Services has no determined that, as of March 19, 2020, COVID-19 represents a public health disaster within the meaning of Chapter 81 of the Texas Health and Safety Code." *See* Docket Entry 6, Exhibit C.

The Texas Legislature has given a county judge broad authority to fulfill his responsibilities concerning the declaration of a local disaster. As other courts have noted, "[t]his crisis is fluid and the rapidity of its changes require quick action at every level of the government. Each level must weigh the needs of the many against individual needs". *Mega Vape, LLC, v. The City of San Antonio*, 2020 WL 1933938 *3 (WD Tex.- San Antonio, 2020). Specifically, Texas Government Code, section 418.108(g) provides that "[t]he county judge or the mayor of a municipality may control ingress to and egress from a disaster area under the jurisdiction and authority of the county judge or mayor and control the movement of persons and the occupancy in that area." TEX. GOV'T

---

2020.pdf. Attached as Exhibit 1.

CODE §418.108(g). Based on his statutory authority and the disaster declarations of Governor Abbott and Dr. Hellerstedt, Judge Cano issued various Executive Orders necessary to prevent the imminent threat to the health and safety of the citizens of Brewster County from COVID-19. These Orders acknowledge the declarations.

Additionally, on March 25, 2020, Judge Cano issued a Declaration of Local State of Disaster due to a Public Health Emergency which provides that:

> **WHEREAS,** on March 13, 2020, the Governor of the State of Texas issued a proclamation certifying that COVID-19 poses an imminent threat of disaster in the state and declaring a state of disaster for all counties in Texas; and
>
> **WHEREAS**, on March 19, 2020, John W. Hellerstedt, M.D., Commissioner of the Department of State Health Services, issued a Declaration of a Public Health Disaster in the State of Texas certifying that the introduction and spread of the communicable disease known as COVID-19 in the State of Texas has created an immediate threat, poses a high risk of death to a large number of people and creates a substantial risk of public exposure because of the disease's method of transmission and evidence that there is community spread in Texas; and
>
> **WHEREAS**, on March 19, 2020, the Governor of the State of Texas issued Executive Order GA 08 providing that COVID-19 continues to spread and to pose an increasing, imminent threat of disaster throughout Texas and that the Centers for Disease Control and Prevention (CDC) advises that person-to-person contact heightens the risk of COVID-19 transmission; and
>
> **WHEREAS,** Brewster County, Texas, is taking extraordinary measures to prevent the spread of this potentially devastating disease within our community and the imminent threat of spread from outside the County through visitors, including but not limited to recreational visitors/travelers; and
>
> **WHEREAS,** said state of disaster requires that certain emergency protective measures be taken pursuant to the Texas Disaster Act of 1975 relating to Emergency Management and Public Health, pursuant to Chapter 418 of the Texas Government Code.

*See* Docket Entry 6, Exhibit F. Similarly, Governor Abbott renewed "the declaration of March 13, 2020, stating that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all

counties in Texas" on April 12, 2020.[2] Governor Abbott's Proclamation states, in part, that "a state of disaster continues to exist in all counties due to the spread of COVID-19." *Id*.

In this matter, Plaintiff seeks to have this Court usurp the power of the governing local authority granted by Chapter 418 of the Texas Government Code, the Brewster County Judge. Specifically, Plaintiff seeks to have this Court pass judgment on the wisdom and efficacy of Judge Cano's emergency measures due to COVID-19. Such a request is barred by the political question doctrine and also by *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) because the local orders are a reasonable restriction on private rights in emergency circumstances.

Recently, the Fifth Circuit addressed the COVID-19 pandemic recognizing that "under the pressure of great dangers, constitutional rights may be reasonably restricted as the safety of the general public may demand." *In re Abbott,* 954 F.3d 772, 778 (5th Cir. 2020) (quoting *Jacobson, 197* at 29 (internal quotations omitted)). "That settled rule allows the state to restrict, for example, one's right to peaceably assemble, to publicly worship, **to travel, and even to leave one's home**." *Id*. (emphasis added). As the Fifth Circuit notes when discussing *Jacobson*,

> the Supreme Court considered a claim that the state's compulsory vaccination law – enacted a midst a growing smallpox epidemic in Cambridge, Massachusetts— violated the defendant's Fourteenth Amendment right "to care for his own body and health in such way as to him seems best." The Court rejected this claim. Famously, it explained that the "**liberty secured by the Constitution ... does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint**." Rather, "**a community has the right to protect itself against an epidemic of disease which threatens the safety of its members**." In describing a state's police power to combat an epidemic, the Court explained: [I]n every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand.

*Id.* at 783. (quoting *Jacobson,* 197 at 26)(emphasis added).

---

2 https://gov.texas.gov/uploads/files/press/DISASTER_renewing_covid19_disaster_proc_04-12-2020.pdf. Attached as Exhibit 2.

Further, the Supreme Court in *Jacobson* determined that a person:

> may be compelled, by force if need be, against his will and without regard to his personal wishes or his pecuniary interests, or even his religious or political convictions, to take his place in the ranks of the army of his country, and risk the chance of being shot down in its defense. It is not, therefore, true that the power of the public to guard itself against imminent danger depends in every case involving the control of one's body upon his willingness to submit to reasonable regulations established by the constituted authorities, under the sanction of the state, for the purpose of protecting the public collectively against such danger.

*Jacobson*, 197 at 29-30.

The Fifth Circuit states that "[t]he bottom line is this: when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some real or substantial relation to the public health crisis and are not beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *In re Abbott,* 954 at 784. Thus, the Court determined that "the district court overstepped its proper role and imposed its own judgment about how the COVID-19 pandemic should be handled with respect to abortion" and that "[t]his was a usurpation of the state's power." *Id*. at 793.

It is undisputed that Declarations and Executive Orders issued by Judge Cano directly relate to the increasing, imminent threat of the spread of COVID-19 throughout Texas, including Brewster County, as identified by Governor Abbott's Proclamations and Dr. Hellerstedt's Declaration. Based on the global pandemic of COVID-19 and the statutory authority granted in Chapter 418 of the Texas Government Code, Plaintiff fails to demonstrate this Court's jurisdiction based on the political question doctrine.

## III. FAILURE TO STATE A CLAIM – FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6)

### A. FRCP 12(b)(6) STANDARD

A pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While this does not require the Plaintiff to present "detailed factual allegations" to support its claims, the pleading may not be a simple recitation of the elements of a cause of action, but must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). This standard asks for more than the possibility of the defendant's liability and requires the Plaintiff show the plausibility of entitlement to relief under the law. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557 (plausibility standard requires more than the previous "probability standard").

To survive a motion to dismiss, the complaint must present sufficient facts that would allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. While the court must take all allegations contained in the complaint as true, mere conclusory statements will not suffice. *Id.* Further, the court is not required to accept as true any legal conclusions couched as factual allegations. *Id.*

### B. CONSTITUTIONAL VIOLATION CLAIM

In this case, Plaintiff merely recites various constitutional provisions but fails to provide more than speculative allegations for any cognizable cause of action. In Count I of Plaintiff's First Amendment Complaint, Plaintiff states that "in order for Defendant to lawfully issue a Declaration of a Local State of Disaster and issue orders, he must be able to reasonably conclude or find that a Disaster as defined in Tex. Gov't Code §418.004(1) exists in Brewster County." Docket Entry No. 6 at ¶30. It is undisputed that there is no statutory requirement in Section 418.108 of the Texas

Government Code requiring such a finding. Specifically, Texas Government Code, section 418.108 provides as follows:

> (a) Except as provided by Subsection (e), the presiding officer of the governing body of a political subdivision may declare a local state of disaster.
> (b) A declaration of local disaster may not be continued or renewed for a period of more than seven days except with the consent of the governing body of the political subdivision or the joint board as provided by Subsection (e), as applicable.
> (c) An order or proclamation declaring, continuing, or terminating a local state of disaster shall be given prompt and general publicity and shall be filed promptly with the city secretary, the county clerk, or the joint board's official records, as applicable.
> (d) A declaration of local disaster activates the appropriate recovery and rehabilitation aspects of all applicable local or interjurisdictional emergency management plans and authorizes the furnishing of aid and assistance under the declaration. The appropriate preparedness and response aspects of the plans are activated as provided in the plans and take effect immediately after the local state of disaster is declared.
> (e) The chief administrative officer of a joint board has exclusive authority to declare that a local state of disaster exists within the boundaries of an airport operated or controlled by the joint board, regardless of whether the airport is located in or outside the boundaries of a political subdivision.
> (f) The county judge or the mayor of a municipality may order the evacuation of all or part of the population from a stricken or threatened area under the jurisdiction and authority of the county judge or mayor if the county judge or mayor considers the action necessary for the preservation of life or other disaster mitigation, response, or recovery.
> (g) The county judge or the mayor of a municipality may control ingress to and egress from a disaster area under the jurisdiction and authority of the county judge or mayor and control the movement of persons and the occupancy of premises in that area.
> (h) For purposes of Subsections (f) and (g):
> > (1) the jurisdiction and authority of the county judge includes the incorporated and unincorporated areas of the county; and
> > (2) to the extent of a conflict between decisions of the county judge and the mayor, the decision of the county judge prevails.
> (i) A declaration under this section may include a restriction that exceeds a restriction authorized by <u>Section 352.051, Local Government Code</u>. A restriction that exceeds a restriction authorized by <u>Section 352.051, Local Government Code</u>, is effective only:
> > (1) for 60 hours unless extended by the governor; and
> > (2) if the county judge requests the governor to grant an extension of the restriction.

TEX. GOV'T CODE §418.108. Further, Plaintiff states that "Defendant County Judge declared that a Disaster existed in Brewster County without any evidence to support that declaration." Docket Entry No. 6 at ¶30. Plaintiff's statement intentionally confuses the statutory language and purposefully misleads the Court. It is undisputed that prior to Judge Cano issuing any declaration concerning Brewster County, Governor Abbott issued a Proclamation "certifying that COVID-19 poses an imminent threat of disaster in the state of and **declaring a state of disaster for all counties in Texas**." *See* Docket Entry No. 6, Exhibit A (emphasis added). Further, the Commissioner of the Department of State Health Services, Dr. Hellerstedt, issued a Declaration of a Public Health Disaster in the State of Texas for the entire State of Texas.

Additionally, Plaintiff asserts multiple times in his various counts that the actions of Defendants "failed to serve a compelling state interest" or "compelling governmental interest." Docket Entry No. 6 at ¶34, 38, 45 and 52. However, such assertions fail to recognize Governor Abbott's Proclamations of State of Disaster and Dr. Hellerstedt's Declaration of a Public Health Disaster. Further, such allegations are contrary to the holding in the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) as addressed herein, Section II, and discussed by the Fifth Circuit, *In re Abbott,* 954 F.3d 772, 778 (5th Cir. 2020)

Plaintiff has failed to state any cognizable constitutional violation against Defendant for which relief can be granted, and his claims must be dismissed as a matter of law.

### IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Brewster County Judge Eleazar R. Cano prays that the Court grant his Motion to Dismiss, denying Plaintiff all relief requested, dismissing Plaintiff's claims in their entirety, and for such other relief as the court deems just and proper.

Respectfully submitted,

/s/J. Eric Magee
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of May, 2020, I electronically filed the foregoing with the Clerk of Court and will send notification of such filing to the following via electronically:

Francis S. Ainsa, Jr.
Attorney at Law
3801 N. Capital of Texas Hwy Suite E240, PMB 653
Austin, Texas 78746
Tel: (915) 726- 3681
Fax: (512) 532-6614
fain@ainsalaw.com

Carlos E. Cardenas
Attorney at Law
717 E. San Antonio, 3rd Floor
El Paso, Texas 79901
(915) 544-7860
(915) 532-4768 Fax
cecardenaslaw@gmail.com

ATTORNEYS FOR J.P. BRYAN

/s/ J. Eric Magee
J. Eric Magee