IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| J.P. Bryan, Mary Jon Bryan, § | | |
| Gage Properties, Inc., § | | |
| And Gage Hotel L.P., § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | CASE NO. 4:20-cv-00025-DC-DF | |
| § | | |
| County Judge Eleazar R. Cano, § | | |
| Defendant. § | | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Brewster County Judge Eleazar R. Cano files this Response to Plaintiffs' Objections to the Honorable David B. Fannin's Report and Recommendation. Dkt. No. 81. Specifically, Magistrate Judge David B. Fannin recommended that Defendant's Second Motion to Dismiss be granted on the first and second grounds. Dkt. No. 80. Defendant Judge Cano offers the following:

Pursuant to 28 U.S.C. §636(b)(1), Plaintiffs contest the Report and Recommendation by filing written objections. Dkt. No. 81. "A party's objections to a report and recommendation entitle it to a *de novo* review of those claims [listed in the objections] by a District Court." *Schuler v. Berryhill*, No. 7:18-CV-047-DC, 2019 WL 1313465, at *2 (W.D. Tex. Mar. 4, 2019)(citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). However, objections must specifically identify those findings or recommendations to which the party objects. *Id.*; Fed. R. Civ. P. 72(b)(2). "In such cases, the Court need only review the Report and Recommendation and determine whether they are either clearly erroneous or contrary to law." *Kiolbassa Provision Co. v. Travelers Prop. Cas. Co. of Am.*, No. SA-20-CV-507-FB, 2021 WL 5037590, at *1 (W.D. Tex. Sept. 22, 2021)(citing

*United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.), *cert. denied*, 492 U.S. 918 (1989)). Finally, the Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419 (5th Cir. 1987).

Here, Plaintiffs file their objections to the Report and Recommendation based on three arguments: (1) objections to the application of the Political Questions Doctrine; (2) objections to the reliance on *In Re Abbott* (*Abbott III*); and (3) objections to use of Texas Government Code §418.1015 to justify the Declarations issued by Defendant Judge Cano. Specifically, Plaintiffs' erroneously attempt to "interpret" Judge Fannin's Report and Recommendation by stating that it

> appears to mean that, because Tex. Gov. Code Ann. §418.018 does not expressly require Defendant to have a factual basis for declaring a local state of disaster, Defendant is nonetheless authorized to declare a local state of disaster even if a statutorily defined disaster does not exist. This finding does not in and of itself support the conclusion that Plaintiffs' case presents a political question but does indicate that Judge Fannin is not inclined to link the Defendant's authority under Tex. Gov. Code Ann. §418.108 to the statutory definition of a disaster. In fact, Judge Fannin never makes a finding that a disaster as defined in Tex. Gov. Code Ann. §418.004(1) exists. The disconnect between the Defendant's authority and the definition of a disaster goes to the heart of Judge Fannin's approach to this case and has apparently led him to using the Political Question Doctrine as a means to dismiss Plaintiffs' case.

Dkt. No. 81, pg. 5. Further, Plaintiffs assert that they can satisfy the *Jacobsen* test arguing that (1) "no disaster existed as defined in Tex. Gov. Code Ann. §418.104(1) (sic) on" March 17 and 25, 2020; (2) that Defendant's orders "were unauthorized and *ultra vires*" regulating ingress to and egress from occupied structures, "at the request of an unqualified medical doctor"; and (3) Governor Abbott's Executive Order GA-14 suspended Defendant's Orders. *Id*. at pgs. 8-9. Finally, Plaintiffs misstates the Report and Recommendation related to §418.1015. *Id.* at pgs. 18-20.

Plaintiffs have failed to demonstrate that Judge Fannin's Order was clearly erroneous or contrary to law. Here, Judge Fannin properly determined that Brewster County Judge Cano acted within his statutory authority and that "there is no statutory requirement for defendant to consult

with certain medical professionals." Dkt. No. 80, pg. 8. "Texas courts find county judges' exercising of this authority to be quite discretionary." *Id*.

Specifically, Texas Government Code, section 418.108 provides as follows:

(a) Except as provided by Subsection (e), **the presiding officer of the governing body of a political subdivision may declare a local state of disaster**.
(b) A declaration of local disaster may not be continued or renewed for a period of more than seven days except with the consent of the governing body of the political subdivision or the joint board as provided by Subsection (e), as applicable.
(c) An order or proclamation declaring, continuing, or terminating a local state of disaster shall be given prompt and general publicity and shall be filed promptly with the city secretary, the county clerk, or the joint board's official records, as applicable.
(d) A declaration of local disaster activates the appropriate recovery and rehabilitation aspects of all applicable local or interjurisdictional emergency management plans and authorizes the furnishing of aid and assistance under the declaration. The appropriate preparedness and response aspects of the plans are activated as provided in the plans and take effect immediately after the local state of disaster is declared.
(e) The chief administrative officer of a joint board has exclusive authority to declare that a local state of disaster exists within the boundaries of an airport operated or controlled by the joint board, regardless of whether the airport is located in or outside the boundaries of a political subdivision.
(f) The county judge or the mayor of a municipality may order the evacuation of all or part of the population from a stricken or threatened area under the jurisdiction and authority of the county judge or mayor if the county judge or mayor considers the action necessary for the preservation of life or other disaster mitigation, response, or recovery.
(g) **The county judge** or the mayor of a municipality **may control ingress to and egress from a disaster area under the jurisdiction** and authority of the county judge or mayor and control **the movement of persons and the occupancy of premises in that area.**
(h) For purposes of Subsections (f) and (g):
    (1) the jurisdiction and authority of the county judge includes the incorporated and unincorporated areas of the county; and
    (2) to the extent of a conflict between decisions of the county judge and the mayor, the decision of the county judge prevails.
(i) A declaration under this section may include a restriction that exceeds a restriction authorized by Section 352.051, Local Government Code. A restriction that exceeds a restriction authorized by Section 352.051, Local Government Code, is effective only:
    (1) for 60 hours unless extended by the governor; and
    (2) if the county judge requests the governor to grant an extension of the restriction.

TEX. GOV'T CODE §418.108 (emphasis added). Further, the Texas Disaster Act defines "disaster" as meaning "the occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property resulting from any natural or man-made cause, including … epidemic…. TEX. GOV'T CODE §418.004(1).

Plaintiffs do not challenge that Governor Abbott "repeatedly viewed COVID-19 as an extant pandemic, and himself undertook measures to slow the spread of the disease." Dkt. No. 80, pg. 8. Governor Abbott continues to renew the COVID-19 disaster proclamation from March 13, 2020, for **all counties in Texas**.[1] (emphasis added). Similar to Governor Abbott, Judge Cano acted with his independent authority to declare a local state of disaster. As noted by the Court, Plaintiffs are "unsatisfied with those efforts" and the very nature of questioning Judge Cano's decisions "is a classic political question in involving policy choices." *Id.* at pgs. 8-9. "As all are painfully aware, in early 2020 our nation was gripped with an unprecedented public health emergency caused by COVID-19. On March 11, 2020, the World Health Organization ("WHO") declared a global pandemic in response to the spread of COVID-19." *Big Tyme Invs., L.L.C. v. Edwards*, No. 20-30526, 2021 WL 118628 (5th Cir. Jan. 13, 2021). Thus, Judge Fannin properly determined "inquiring into the wisdom, viability, and trustworthiness of Defendant's orders and declarations requires the undersigned to make an initial policy determination of a kind clearly for nonjudicial discretion." Dkt. No. 80 at pg. 9.

The Supreme Court identified "several formulations" to determine whether "a particular case raises a political question, which" the Fifth Circuit enumerates as:

> (1) "a textually demonstrable constitutional commitment of the issue to a coordinate political department;"
> (2) "a lack of judicially discoverable and manageable standards for resolving it;"

---

[1] https://gov.texas.gov/news/post/governor-abbott-renews-covid-19-disaster-declaration-in-november-2021.

(3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;"
(4) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;"
(5) "an unusual need for unquestioning adherence to a political decision already made;"
(6) "or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

*Lane v. Halliburton,* 529 F.3d 548, 558 (5th Cir. 2008)(citing *Baker v. Carr*, 369 U.S. 186, 217 (1962).

The Texas Constitution confers on the county judge and the commissioners court powers and jurisdiction over all county business, as conferred by" the Constitution and laws of the State. Tex. Const. art. V, §18 (b). The Texas Disaster Act of 1975 authorizes the county judge to declare a local state of disaster and the requirement for commissioners court to consent to the continuance or renewal of the local state of disaster within seven days. Tex. Gov't Code §418.108(a) and (b). Further, the Act provides the county judge with the ability to control ingress to and egress from a disaster area and control the movement of persons and the occupancy of premises in that area." *Id*. at (g). Plaintiffs cannot and have not identified particular standards for resolving disputes related to the Texas Disaster Act of 1975 or addressing the constitutional and statutory authority granted to a county judge. Therefore, as noted by Judge Fannin, the Court would be required to make a prohibited policy determination.

Judge Fannin properly determined that this case invokes the political question doctrine. However, Judge Fannin also determined that he must conduct a "brief judicial review", "even where the political question doctrine may typically foreclose judicial second-guessing of public officials decisions, during times of contagion", in order to determine if Defendant's actions overcome the minimal *Jacobson* hurdle. Dkt. No. 80, pgs. 9-11. Specifically, "given the pandemic conditions in the facts presented," the Court must conduct "some judicial inquiry into the propriety

of Defendant's actions." *Id*. at pg. 11.  Although Plaintiffs attempt to assert that no disaster existed, "COVID-19 presented itself on a pandemic scale" as acknowledged by President Trump, Governor Abbott and Dr. Hellerstedt M.D., Commissioner of the Department of State Health Services.

Judge Fannin states that "Defendant's most substantiated argument is that his authority to act was primarily under §418.108(a) as an independent county judge, in contrast to §418.1015(b) as Governor Abbott's designated agent. (Doc. 52 at 2, 5). Therefore, if the methods by which Defendant promulgated his orders and declarations were as statutorily prescribed under §418.108(a), his actions may be found to be valid." *Id*. at pg. 12. Further, Judge Fannin determined "that Defendant was indeed acting pursuant to his independent §418.108 authority." *Id*. at 13. Here, "it is undisputed that [Defendant's orders and declarations] [are] substantially related to curbing the spread of COVID-19." *Id*. at 14. "Plaintiffs' asserted rights are all *nonfundamental*, non-intermediary, and non-suspect classifications Defendant's purpose of the prevention and spread of COVID-19 in Brewster County is surely a legitimate purpose." *Id*. at pg. 15 (internal quotations omitted).

The Supreme Court has stated that:

> Chief Justice Marshall famously wrote that it is "the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803). Sometimes, however, "the law is that the judicial department has no business entertaining the claim of unlawfulness—because the question is entrusted to one of the political branches or involves no judicially enforceable rights." *Vieth v. Jubelirer*, 541 U.S. 267, 277, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004) (plurality opinion). In such a case the claim is said to present a "political question" and to be nonjusticiable—outside the courts' competence and therefore beyond the courts' jurisdiction. *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Among the political question cases the Court has identified are those that lack "judicially discoverable and manageable standards for resolving [them]." *Ibid.*

*Rucho v. Common Cause,* 139 S. Ct. 2484, 2494 (2019).

Further, the Supreme Court notes that "[w]ith uncertain limits, intervening courts—even when proceeding with best intentions—would risk assuming political, not legal, responsibility for a process that often produces ill will and distrust." *Id*. at 2498-99 (quoting *Vieth*, 541 U.S. at 307 (opinion of Kennedy, J.)). Therefore, if the Court is to interject itself "into the most heated partisan issues", it "must be **armed with a standard that can reliably differentiate unconstitutional from constitutional**." *Id.* (internal citations omitted)(emphasis added).

"Judges are not public health experts, and we should respect the judgment of those with special expertise and responsibility in this area." *Big Tyme,* 2021 WL 118628, at *10. (quoting *Roman Catholic Diocese*, 141 S. Ct. at 68; *see also S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614, 207 L.Ed.2d 154 (2020) (Mem.) (Roberts, C.J., concurring) ("The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'").

Further, the Supreme Court in *Jacobson* determined that a person:

> may be compelled, by force if need be, against his will and without regard to his personal wishes or his pecuniary interests, or even his religious or political convictions, to take his place in the ranks of the army of his country, and risk the chance of being shot down in its defense. It is not, therefore, true that the power of the public to guard itself against imminent danger depends in every case involving the control of one's body upon his willingness to submit to reasonable regulations established by the constituted authorities, under the sanction of the state, for the purpose of protecting the public collectively against such danger.

*Jacobson*, 197 at 29-30. "**[L]iberty secured by the Constitution ... does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint**." *Id.* at 26 (emphasis added). "Upon the principle of self-defense, of paramount necessity, a

community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27.

The Supreme Court "established the principle that the matters of public health and safety are functions of another branch of government and it would be impermissible judicial overreach and a violation of the separation of powers if the Court were to second-guess the modes used by the legislative and executive branches to protect the people at large so long as they are not arbitrary or unreasonable. *Underwood v. City of Starkville, Mississippi*, No. 20CV00085GHDDAS, 2021 WL 1894900, at *4 (N.D. Miss. May 11, 2021)(citing *Jacobson*, 197 at 27-28) "Even in instances of competing theories regarding public safety, it is the legislature's prerogative and responsibility to decide on the appropriate course of action." *Id.* "As such, the judiciary has no place in adjudicating or relitigating such decisions." *Id.*

## PRAYER

For the reasons stated in the Magistrate Judge's Report and Recommendation, (Dkt. No. 80), Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. No. 50)("Defendant's Second Motion to Dismiss") and Defendant's Reply to Plaintiffs' Response (Dkt. No. 52), Defendant Brewster County Judge Eleazar R. Cano prays that the Court overrule Plaintiffs' objections and accept the Report and Recommendation of the Magistrate Judge granting Defendant's Motion to Dismiss and dismissing this matter in its entirety.

Respectfully submitted,

/s/J. Eric Magee
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701

(512) 482-0701 telephone  
(512) 480-0902 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of November 2021, I electronically filed the foregoing with the Clerk of Court and will send notification of such filing to the following electronically:

Francis S. Ainsa, Jr.  
3801 N. Capital of Texas Hwy Suite E240, PMB 653 Austin, Texas 78746  
Tel: (915) 726- 3681  
Fax: (512) 532-6614  
fain@ainsalaw.com

Carlos E. Cardenas  
717 E. San Antonio, 3rd Floor El Paso, Texas 79901  
(915) 544-7860  
(915) 532-4768 Fax  
cecardenaslaw@gmail.com

/s/J. Eric Magee  
J. Eric Magee